Allen, J.
Some interesting questions of mercantile law are involved in the decision of this cause: and as this is a branch of jurisprudence with which my previous pursuits have not made me familiar, I feel great diffidence in the correctness of the conclusions to which my reflections have conducted me. That diffidence is enhanced, in the present instance, from the impression, that the result to which I have arrived, may do injustice to a fair creditor, provided the facts necessary, in my opinion, to make out his case, had been established ; facts which possibly he might have established by proof, but has failed to do so. He has elected, however, to submit his cause upon the evidence in the record; and it becomes our duty to pronounce what seems to us to be the law upon the case as it now appears.
The first enquiry presented is, in what capacity did Davidson transact business in England ? in other words, did these partners carry on business at Richmond, in the name and firm of Dicks, Moore &p co., and in England under the firm of William Davidson ? Upon this question, there is no proof in the record. The only information we have is furnished by the answer of Cunningham. On this point, Smithson himself must rely upon the answer, and upon it alone. He does not expressly aver in his bill, that the firm transacted business in England in the name of William Davidson. He states, that in 1817, he sold goods to the firm of Dicks, Moore Sf co., of which N. Dick £f J. Dick, then residing at Richmond, A. Moore, then of Petersburg, and W. Davidson of London, were partners; that the goods were received by Davidson and shipped to the partners in Virginia; that for the payment of the price of them, *42 he drew a bill on Davidson on account of Dicks, Moore co- which was accepted by Davidson, but was not paid at maturity, the house having failed, and the bill was °rreturned: that although the failure took place in Eng-^an^> there was no dissolution of the partnership at that time; the partners continued to do business in Virginia, and for aught we knew, were able to comply with their engagements. Now, this amounts to no direct allegation, that the partnership did business in England under the name of W. Davidson. On the contrary, such a construction would do violence to the allegations, taking them all together. He delivered the goods to Davidson, not to the house of Dicks, Moore if co. trading under that name. He drew on Davidson individually; and as conclusive evidence that he did not consider that as the style of the firm he draws on him to pay on account of Dicks, Moore ip co. which would have been idle, if the firm transacted business under the name of W. Davidson; for if such had been the fact, the bill on Davidson would have been a bill on the firm. And although it is said by way of recital, that the house having failed the bill was returned, it is not alleged that the house was known by the name of W. Davidson. If the statement could be construed into an averment, that there was a house of the partnership established at London, it is still uncertain in what name it transacted business. The answer states, that there was a mercantile house at Richmond, trading under the firm of Dicks, Moore ip co., the members of which resided in different places; one of them, W. Davidson, at London. But it no where is .admitted that the firm had a house transacting business at London, in that or any other name. The firm transacted its business at Richmond ; it will not be pretended,’ that a branch of the house is established wherever a single partner happens to reside.
If a partner in trade draw, endorse, or accept a bill in the name of the firm, it will be binding on the firm jointly in the hands of a bona fide holder. This power *43 of one partner to bind the firm, is implied by law from the principle, that members of trading partnerships are constituted agents, the one for the other, for entering ° , . , , , . ’ mto contracts connected with the business and concerns of the partnership, so that by the contracts of the agent all his principals are bound. Fox v. Clifton & others, 6 Bing. 776. 795. 19 Eng. C. L. R. 233. 239. But to give to the act of one partner such an effect, it must be done in the name, and seemingly on behalf of the firm. In this case, the answer of Cunningham not only does not admit, that this partnership transacted business in England under the firm of TV. Davidson, or that the partnership had a house in London, but it avers, that the defendant always understood and now believes, that Davidson was doing business in London on his own separate account, with which the firm of Dicks, Moore f co. had no concern. This allegation is not responsive to any charge in the bill; it is affirmative, and if essential to the defence, should have been sustained by proof. But where, as in this case, no evidence is adduced to prove the existence of a house or firm in London, and the plaintiff is compelled to rely on the admissions of the answer to establish the fact, he makes it evidence ; the whole answer must be taken together, and it expressly negatives the pretension that the house in Richmond transacted business in London under the name of TV. Davidson.
Where a partnership is conducted in the name of an individual partner, and a bill is drawn, endorsed or accepted by such partner, in an action against the firm, the plaintiff must be prepared to shew that the partner A. drew the bill not as A. but as A. & B. Collyer on Partners. 226. In The So. Carolina Bank v. Case, 8 Barn. & Cress. 427. 15 Eng. C. L. R. 256. it appeared, that the business of the house of Crowder, Clough co. was carried on in England under that name, but in the U. States all the business of the partnership was *44 transacted in the name of J. B. Clough alone; and he carried on no separate business: the court of king’s bench held, that J. B. Clough was to be considered as the name of the firm for the purposes of business in America, and consequently, that the partners were liable as endorsers of the bills. The fact that the partnership transacted business under that name, was necessary to be established, before the partners could be rendered liable on the bills. This is clear from another case in which nearly the same parties were concerned, the case of Denton v. Rodie, 3 Camp. 493. The house of Clough, Wilkes Clough was established at Liverpool; J. B. Clough, one of the partners, was resident at New York ; and he drew bills in his own name on the house at Liverpool, which were regularly accepted and paid until they stopped payment ,• when they stopped, one of the bills had been accepted, the others had not been presented. Lord Ellenborough distinguished the case from that of Emly v. Lye, 15 East 7. the circumstances proving a loan rather than a discount; and concluded, that though he could not say the partners were jointly liable on the unaccepted bills, they were jointly liable for the amount, as for money lent, or money had and received. Collyer, commenting on the case, (p. 269.) says that the case seems to have been of the same nature and conducted by nearly the same parties as those in The So. Carolina Bank v. Case; and that, on the authority of that case, the plaintiffs might have recovered against the defendants as'drawers of the bills, supposing the name of J. B. Clough to have been in fact the name of the firm for the purposes of the business in America. The same proposition is maintained by judge Story in U. States Bank v. Binney, 5 Mason 176. 189. The partnership was carried on in the name of John Winship ; he endorsed notes in his own name; and in an action against the firm on these notes, it was held, that the plaintiffs must shew, either directly or by implication, *45 Hi at the notes were offered by Winship as notes binding the firm, and not merely himself personally; or that the discount was made for the benefit, or in the course of business of the firm. In the case before us, the plaintiff has not shewn that the partnership of Dicks, Moore Sp co. did business under the name of W. Davidson in Condon ; and therefore the defendants cannot, according to these authorities, be held liable on the bill drawn by *Smithson on Davidson, and accepted by him, by force of the bill itself, unless it appears upon the face of the bill, to have been accepted in the name of the firm.
Bills of exchange, from their great utility in carrying on the mercantile transactions of the world, have been highly favoured: and, generally, all the parties are liable to the bona fide holder, who has given value for it before it became due. Such being the binding effect of the contract, no person can be considered as a party unless his name, or the name of the firm of which ho is a partner, appear on some part of it. Chitty on Bills 30. What is there on the face of this bill to charge the partnership of Dicks, Moore Sp co. ? It is drawn on W. Davidson, and accepted by him. I have endeavoured to shew, that this was not the name of the firm in England: and if that has been established, or rather, if it has not been shewn, on the contrary, that the acceptance made by Davidson was made in the character of the firm, and not as an individual, the authorities are clear, that an action cannot be supported against the firm on the bill. Wherever a person draws, accepts, or endorses for himself and partners, it is laid down that he should express, that he does so for himself and partners, or subscribe their names, or the name of the firm; and that otherwise, it will not bind the partners. Chitty on Bills 66. And this has been the settled and uniform doctrine from the earliest cases down to the present day. So strict is the rule, that if a person advances money to the firm, and takes the separate bill of the partner, he *46 cannot sue the firm on that security, although he may possibly succeed in an action against the firm for money advanced. On the bill the contract is several, and the individual partner alone can be sued upon it. Collyer 262. Siffkin v. Walker, 2 Camp. 308. In Emly v. Lye, 15 East 7. George Lye and E. L. Lye were partners, and in the habit of drawing bills, some in the name of the firm, some by one partner, others by the other; they were discounted by Burrough at various times, without distinction between the bills, he conceiving that they were all drawn on partnership account; and the proceeds were applied to the partnership accounts: lord Ellmborough held, that the first counts in the declaration (on the bills themselves) were properly abandoned; for, unquestionably, on a bill drawn by one only, it cannot be allowed to supply by intendment the names of others, in order to charge them; that if the plaintiffs, therefore, rested their claim upon the bills, they should confine it to the drawer: and the court, treating the negotiation as a discount, not a loan, held that the plaintiffs were not entitled to recover on the money counts. And in the argument here, it has been contended, that that was the only point decided. But the quotation given shews that the court held, that the partners could not be rendered liable on the bills; and that is the question of which we are now treating.
It was contended, that this bill shews on its face, that it was drawn on account of Dicks, Moore & co. that it calls on Davidson a partner to pay on account of that firm, and he has accepted generally; and that, as a general acceptance must be construed to be an acceptance according to the terms of the bill, therefore this acceptance, being made by a partner having authority to bind the firm, must be treated as an acceptance by the firm. The general proposition may be true; but it seems to me, the consequence deduced does not necessarily follow. To suppose so, we must first concede, that the *47 terms, “ on account of Dicks, Moore & co.” make it the 7 bill of that firm. If Davidson were not a partner, would such an acceptance bind the firm ? That will not be pretended. Is it not equally clear, that a creditor of the firm may take a separate security from one of the partners for the joint liability ? This is established by the case of Emily v. Lye, and numerous others. How then is the holder to know, from the face of such an instrument, whether it was accepted by a stranger on account of the firm, or by the partner, on his individual account ? He sees the bill directed to an individual, who has accepted ; he knows that he is bound, and takes it upon the faith of his individual responsibility; can he then, by extrinsic testimony, be driven to resort to the social effects ? This would be to change the contract which the bill and acceptance import, by evidence aliunde, and so far to impair the general credit of the security. The cases relied on to support the argument, are cases in which the bill was drawn on or accepted by the firm. Thus in Mason v. T. Rumsey sen. & T. Rumsey jun. 1 Camp. 384. (a leading case) the bill was drawn on messrs. Rumsey Sf co. and being shewn to T. Rumsey junior, he wrote across it, “ accepted, T. Rumsey junior.” The action was against both, but was defended by T. Rumsey junior alone, who contended, that he was not liable as a joint acceptor: that if a bill be drawn upon a firm, it must be accepted in the name of the firm or for the firm. The court held otherwise: that such an acceptance does not indeed prove a partnership ; hut if the defendants were partners, they are both bound by it: that for this purpose, the word accepted, if written on the bill, would have been enough; for if a bill is drawn on a firm, and accepted by one of the partners, he must be understood to exercise his power to bind his copartners, and to accept the bill according to the terms in which it is drawn. In that case, the liability resulted from the fact, that the bill *48 was drawn on the firm. So drawn, it shewed upon its ^ace> an intenti°n to charge the firm; the terms imported a liability of the firm, and an intention to look to the finn for satisfaction; and being accepted by a partner having authority to bind them, it was an admission of the right to charge the firm, and an agreement to pay according to the terms of the demand. But in the case before us, the words used do not import such an intention, or establish such a charge. In the supposed case of an acceptance by a stranger, it would not create a charge; and if the acceptance be by a partner, it does not follow that he may not have been furnished with funds; and that fact being known to the drawer, he may have intended to taire a separate security for the joint debt. The words “ on account of Dicks, Moore & co.” might have been inserted merely to designate, for the benefit of the acceptor, the account on which he pays. Wells v. Masterman, 2 Esp. Rep. 731. is like the case of Mason v. Rumseys: the bill was drawn on the firm, and accepted by one partner. See also Dolman v. Orchard, 2 Car. & Payne 104. 12 Eng. C. L. R. 47. The case of Lloyd v. Ashby, 2 Barn. & Adolph. 23. 22 Eng. C. L. R. 17. proceeds upon the same principle. There, persons as partners carried on business under the style of Ashby Sp co.; one withdrew; and the business was afterwards carried on under the name of Ashby & Rowland; Shaw afterwards entered the firm, as a dormant partner, but no change was made in its name; a bill was drawn on the firm of Ashby & co. which firm had ceased to exist; and it was accepted by Ashby & Rowland: the court held that notwithstanding the variance between the direction and the acceptance, the three partners constituting the firm of Ashby & Rowland were bound. And this would seem to be perfectly clear; for no matter to whom the bill was addressed, or whether addressed at all, one partner having a right to bind the firm, when he acts in the name of *49 the firm, having accepted in the name of the firm, all were liable.
It is argued, that this is a suit by the drawer against , _ , iii' the acceptor, and that as between them, the drawer might recover; though, if the plaintiff were endorsee,. it might be otherwise. The drawer might recover by force of the contract, if made with the firm; but not, I conceive, upon the bill. If it is a separate security taken from one partner, he alone could be sued on it. Upon the bill, the plaintiff whether drawee, payee or endorsee, can only charge the persons appearing on the face of it to be parties. Though as between the drawer and acceptor, the former may have a legal remedy against the firm by going to the original consideration, and shewing that the contract was made with the firm, he will then recover for money lent, or had and received, or for the goods sold.
That the expression in this bill “ on account of Dicks, Moore Sp co.” cannot be so construed as to convert the bill into a partnership security, when accepted by one partner, is, I think, shewn by the case of Thomas v. Bishop, 2 Stra. 955. which occurred at an early period, and has never, that I can discover, been questioned or overruled. It was the case of an agent; and it decides, that he should accept or endorse in the name of his principal, or state in writing he accepts as agent. The plaintiff was endorsee of a bill drawn on defendant, in these words: “At thirty days sight, pay to J. S. or order £ 200. value received of him, and place the same to account of the York Buildings company, as per advice from C. Mildmay.” Addressed “ To mr. H. Bishop cashier of the York Buildings Co. at their house in Winchester street London.” “Accepted per H. Bishop.” At the trial Bishop, against whom the action was brought on his acceptance, proved that the letter of advice was addressed to the company; and the bill having been brought to their house, he was ordered to accept it. A *50 verdict was found for the plaintiff under the direction of the judge; and on a motion for a new trial, the court held the direction right, stating that the hill on its face imported to he drawn on the defendant; it was accePte^ generally and not as agent; and this being an action by the endorsee it would be of dangerous consequence to admit evidence of extrinsic circumstances, arising from the letter of advice: that a bill of exchange was a contract by the custom of merchants, and the whole of that contract must appear in writing; that here, there was nothing in writing to bind the company, nor could any action be maintained against them on the bill." Leadbitter v. Farrow, 5 Maul. & Selw. 349. is to the same effect. These cases, as to the point under consideration, are stronger than the cases before us. In Thomas v. Bishop, the bill was drawn upon the defendant as cashier &c. he was directed to place it to the account of the company, and it was directed to him at the house of the company. The evidence shewed, that it was drawn in pursuance of a letter of advice to the company, and accepted by their order. The intention to draw on the company was more fully indicated than in the bill before us, and there was every reason to presume, from the face of the bill, that the party intended to accept according to the terms in which it was drawn, and that upon proof of his agency his acceptance would have been the act of the company. The company was held, however, not to be liable on the bill ; which could not have been, if the words “ on account of the company," would constitute it the bill of the company, when accepted by an agent having authority to bind them.
It seems to me, therefore, upon a review of the authorities, that the firm of Dicks, Moore & co. were not bound by this acceptance of Davidson ; that it is to be treated as his individual acceptance ; and in the absence of proof, that this house transacted business in the name *51 of W. Davidson in London, his acceptance in that name does not bind the house, and that no action could be maintained on the bill against the firm.
It remains to enquire, whether the plaintiff is entitled to recover for the goods for which the bill is said to have been drawn and accepted. On this point, he has adduced no proof. The bill is drawn on the 18th August 1817, at two months, for £1073. 12. sterling. The plaintiff says, that, in that year, he sold the goods, and drew the bill. In support of this allegation he has adduced no evidence: he is compelled to resort to the answer. The parties agreed, that the answer might be taken as a deposition subject to all just exceptions; and it is now contended by the appellee’s counsel, that the witness was incompetent, and that his answer cannot be read as a deposition. If he is correct, his case is destitute of all support. For this is a proceeding against the firm of Dicks, Moore & co. which has since been dissolved, and the answer of the executor of one of the partners, would not be evidence against the other defendants. The proceeding is against absentees, but the court, as against them, cannot take the bill as confessed without proof. The statute authorizes the court, as against absentees, to hear the cause upon such proof as the plaintiff may adduce ; but some proof is necessary. 1 Rev. Code, ch. 123. $ 2. p. 475. Without the answer, there is nothing to shew that any goods were ever received by the house of Dicks, Moore & co. But passing that objection, and looking to the answer, we must take it altogether, and what does it disclose touching this question ? It denies that any goods were received in 1817, but admits, that in 1816, goods to the amount of £1106. 15. 6. sterling, put up by Joshua Smithson were shipped by Davidson to Dicks, Moore & co. These goods, it is contended, were the same for which the bill was drawn, and that the allegation that they were sold in 1817 must have been the mistake of coun *52 sel. That may be so. Yet the amount is different, and the bill said to have been drawn and accepted in payment, is dated in August 1817. The goods admitted to have been shipped by Davidson, were shipped in 1816, a^out ei§ht months before the date of the bill (at the shortest calculation). What was the state of the transactions between these parties during this interval, supposing the goods to have been the same ? Were they purchased for and charged to the firm ? If so, why. is not an account exhibited and proof adduced ? The answer further avers that Cunningham understood and believed, that Davidson transacted business on his individual account. Was this such a transaction? And when Davidson was in failing circumstances, was this bill drawn to charge the house of Dicks, Moore & co. with his individual debt ? The plaintiff had it in his power to throw light on these transactions, but he has left us in the dark. There is another fact detailed in the answer which has an important bearing, as part of the res gesta. The goods shipped in 1816 were charged by Dicks, Moore & co. to themselves, and to the credit of Davidson in account with him. Would this have been done, if the firm had been advised of a joint purchase, for which a bill was outstanding against them ? It is said, that this is the usual mode of entries in the books of partners. I imagine that is a mistake. Such a mode of entry would subject the firm to great inconvenience. Upon a dissolution or settlement of the partnership accounts, the partner to whose credit such an entry appeared, would get credit for the amount, and the firm might thereafter be compelled to pay the creditor. If the partner had been charged with funds, he would be entitled to a credit for the goods. But where the firm was pledged for the payment of the debt, the regular mode would seem to be, to charge the firm with the merchandise, and give it credit for the debts when paid. If, therefore, the firm, in this case, had been ad *53 vised, that it was held responsible for the price of the goods, it cannot be supposed they would have given Davidson credit for the amount; thereby in effect paying the price of them. A fraudulent representation by Davidson could not, it is true, affect the claims of the fair creditor of the firm. But here we are driven by the failure of the plaintiff to furnish the proof Avhich ho might have adduced if the facts Avere as he alleges, to gather our information of these transactions from the acts of the firm, as disclosed by the answer: and these acts, so far from sheAving a joint purchase, tend to establish a separate contract with Davidson, to Avhorn the firm has entered credit, and that at a period, when the transactions Avere recent, and there could have been no motive then existing to misrepresent or make false entries. The credit entered on the bill is relied on as a subsequent admission of the liability of the firm. It does not appear by Avhorn the bill was furnished which was credited: if by Davidson, it Avould strengthen the presumption, that this Avas an individual transaction; and if by the firm, nothing would have been easier than to have adduced proof of the fact. Upon the whole, it seems to me the plaintiff has failed entirely in making out this branch of Ihe case. And the admissions of the answer taking it altogether tend to establish, that this was an individual transaction between Davidson and the plaintiff for which the firm Avas never responsible. I think the bill should have been dismissed.
Brooke, J.
After the able opinion of judge Allen, in which I entirely concur, I shall not say as much as otherwise I should have said in this case.
I suppose, that a bill drawn by A. on B. on account of C. and accepted by B. makes B. only, not C. the debtor of A. One mercantile firm may accept a bill on account of another firm, without making the latter debtor to the drawer of the bill, though it may become debtor to the *54 accepting firm when it pays the bill. Then let us see how the parties stood upon the bill before us.
We find, on examination of the record, that the bill drawn by Smithson, on W. Davidson, Davidson’s acceptance of it, and the statements endorsed on it is the only evidence, except the answer of the defendant Cunningham. The plaintiff is indebted to the answer alone for the fact, so essential to his case, that Davidson was a partner in the house of Dicks, Moore & co., a fact, without which there is nothing in the record to sustain his claim. But the answer does not stop there : it is responsive to other allegations of the bill, and it is not to be garbled. It states, that Davidson was a partner of Dicks, Moore & co. and resided at London, but that the defendant understood and believed, that Davidson carried on a separate business of his own at London, in which Dicks, Moore & co., whose business was transacted at Richmond, had no concern. There is no evidence to contradict this statement, and no evidence that there was any branch of the house of Dicks, Moore & co. established at London. It is said, that the answer, in this respect, is afinmative, and the facts affirmatively alleged ought to be proved by other evidence. It is generally true, that affirmative matter alleged in an answer, must be proved: but here, the answer is responsive to the claim set up in the bill, to which the defendant was required to answer, and it must be taken to be true, unless it is contradicted by proof; and if the fact stated had not been true, it might easily have been disproved. Upon this state of the evidence in the record, let Smithson’s pretensions be examined.
It is admitted that the acceptance of a bill by a partner of a firm, will bind the firm, if the bill be drawn on the firm, or he accepts it in the name of the firm: all the cases shew that. But this bill was not drawn on the firm of Dicks, Moore & co. but on Davidson, in his individual character; and he accepted it by writing his *55 own name across it, and not as a partner of Dicks, Moore & co. It was his individual acceptance. The credit of a bill of exchange must appear on its face, and is not to be sustained, much less altered, by extrinsic evidence. An endorsee of this bill would have had no claim against Dicks, Moore & co., nor can the drawer have any claim upon that house, by force of the bill itself. The evidence furnished by the endorsement of the credit on the bill, does not help the case: on the contrary, its excites suspicion, and certainly leaves something to be explained, which is very material. It is a credit of £500. sterling, for a bill on Jones, Loyd Sp co. received as late as February 1819, but it is not stated by whom that bill was drawn, or by whom it was remitted to Smithson, leaving it doubtful whether it was not drawn or remitted by Davidson, in part discharge of his acceptance of the bill in question, of August 1817. There is not a shadow of evidence, that it was drawn or remitted by Dicks, Moore & co. or by any body authorized by them. If Smithson, at the time, had considered Dicks, Moore & co. bound by the bill, or by Davidsons acceptance of it, it had been enough in endorsing the credit, to have stated that the bill of Jones, Loyd & co. was received “ on account of the within bill,” without taking the pains to add, that the credit was given “on account of Dicks, Moore & co."
Upon the whole, I think it very clear, that S'rmthson’s claim against Dicks, Moore Sp co. cannot be sustained upon the bill itself. None of the cases cited at the bar apply exactly to this, but that of Thomas v. Bishop, which, in principle, seems directly in point. In that case, the bill was in these words: “At thirty days sight, pay to J. S. or order £ 200. value received, and place the same to account of The York Buildings company, as per advice from C. Mildmay." It was addressed, “ To rnr. H. Bishop, cashier of The York Buildings convpany, at &c.” And the acceptance was, “ Accepted per *56 H. Bishop,” without addition of his character of cashier. acti°ia was brought by Thomas, an endorsee, against Bishop in his individual character. He proved that the letter of advice, accompanying the bill, was addressed to ^ie Buildings company, and that the bill being brought to then house, he was ordered to accept it, which he did in the same manner in which he had accepted other bills. And his defence was, that The York Buildings company, and not himself individually, was bound by the acceptance. The court held, that Bishop was, and that the company was not, bound by his acceptance in his individual name. Now, surely, the words in the body of that bill, “place the same to the account of The York Buildings company,” were as strong to make that company parties to the bill, as the words in the bill before us, “on account of Dicks, Moore Sf co.” are to make them parties to this bill, and indeed much stronger. And there, too, the bill was addressed to Bishop as cashier of the company ; the letter of advice was addressed to the company; and Bishop accepted by its orders: here, the bill was addressed to Davidson individually, and was accordingly accepted by him in his own name.
On the claim against Dicks, Moore & co. viewed independently of the bill, I shall say a very few words. The only proof is furnished by the answer of the defendant Cunningham: that it appeared, by the books of Dicks, Moore & co. that goods put up by Snvithson were shipped by Davidson to them (not in 1817 when the bill was drawn, but) in 1816, which goods amounted to £1106. 15. 6. sterling (the bill was for £1073. 12. 0.) and that the goods received in 1816, were charged by Dicks, Moore & co. to themselves, and to the credit of Davidson, in their account with him. Now, not to mention the discrepancy in sum and date, and taking the goods received by Dicks, Moore & co. to be the same goods for the price of which Smithson's bill on *57 Davidson was drawn, the circumstances strengthen the conclusion deducible from Smithson’s bill drawn on Davidson and accepted by him individually, that the goods for the price of which the bill was drawn, were sold to Davidson individually, and by him sent to Dicks, Moore & co. to be charged to the house, and credited to Davidson ; which was accordingly done.
Tucker, P.
Though this case has obviously been very badly prepared, and some obscurity rests on certain facts which might have been easily ascertained, yet I think there is enough in the record to sustain the plaintiff’s demand against the firm of Dicks, Moore & co. of Richmond.
It is admitted, on all hands, that W. Davidson of London was a partner of that house and that he resided at London. Dicks, Moore & co. appear to have been importing merchants; and the natural course of business was to establish a house in the great mart with which their trade was carried on. Davidson was at London to do the business there. If he was there doing business for and on account of the firm, he constituted a branch of the house there; and accounts were of course opened between the house in London and the house in Virginia, as is usual in such cases. The books of Dicks, Moore & co. as Cunningham’s answer states, shew that, in the year 1816, goods to the amount of £ 1106. 15. 6. put up by Joshua Smithson were shipped by Davidson to Dicks, Moore & co. This is a pregnant fact. It shews beyond question, that the partner at London procured and shipped for the house at Richmond, the goods required for their business here; and thus we see that the firm had a house in each of these cities. It is said, indeed, that Davidson carried on business on his separate account. But this is not proved; for Cunningham only says he understood and believes that he did. Still less is there any denial of his carrying on business *58 at London for the firm. The entry abovementioned proves, that he did procure from Smithson, and ship to them, a quantity of goods. The presumption is, unless the contrary be proved, that this was done by him as partner. Of what advantage was it to the firm, to send a partner to London for the purpose of purchasmg then-supplies, if they were to be purchased by him on his individual account, and the firm to be charged with an advance for his particular benefit ? It could be none, and we must, therefore, in the absence of proof to the contrary, presume, that the transactions between Davidson and the house at Richmond, were not individual but partnership transactions.
That the goods for which the bill of Smithson was drawn, were the same goods which are credited on the books of Dicks, Moore & co. I think may fairly be presumed. It is said, indeed, that the bill alleges the goods to have been furnished in 1817 when the bill was drawn. But this was an inadvertence doubtless of the counsel. The statements of a bill are not, like those of an answer, binding upon the party. Peake’s Ev. 263. And still less should they be so considered, where the party resides in a foreign land, and the bill is filed by counsel here. The statement of the bill then weighs but little against the established facts here. That Dicks, Moore & co. received a parcel of goods amounting to £1106. 15. 6. appears by their books: that they received them from Davidson also appears: that they were put up by Smithson is also proved by the books themselves, from which Cunningham derived the information that they were so put up by him. Here then are goods to the amount of £1106. 15. 6. put up by Smithson in 1816, and shipped by Davidson to Dicks, Moore & co. in the same year, and the bill is drawn for £1073. 12. 0. in 1817. Can there be a reasonable doubt, that those were the same goods, when neither Smithson nor the defendants pretend, that there was more than one parcel of *59 goods sent by him from Halifax through Davidson of London to Dicks, Moore & co. of Richmond ? It is believed not. It is, therefore, taken as sufficiently proved, that this bill was drawn for the very goods credited on the books of Dicks, Moore & co. to the firm in London; the difference between the original cost (£1073. 12. 0.) and the sum credited (£1106. 15. 6.) arising only from the incidental charges of receiving and forwarding.
It is argued, that because the firm at Richmond charged themselves and credited Davidson with the amount of the goods, they must be supposed to have been furnished on his individual account. But this inference is not a necessary one, since if the business of the firm was carried on at London in the name of Davidson alone, the accounts with him as constituting that firm, would have been opened with him in that name alone. This is the usual course of partnership business. The circumstance, therefore, proves nothing; and the rather, as the parties in the possession of the books and papers, have not brought forward the evidences, which must have been ample, if the advance was an individual transaction, of that fact. It is further to be remarked, that the res gesta furnishes the strongest presumption of the contrary. Smithson of Halifax puts up goods for Dicks, Moore & co., with whom he has no direct correspondence, and they are sent to them through Davidson of London. He draws his bill upon Davidson on account of Dicks, Moore & co. of Richmond, to whom he looked, as the parties to whom he had advanced his goods. How came he to know them in the transaction, if the goods had not been sent originally with the understanding that they were for them ? Davidson also, when they are received, forwards them to the firm in Richmond, without breaking them up, I presume, as Cunningham says that goods put up by Smithson were shipped by Davidson &c. Moreover, he accepts the bill drawn on him for their account. And thus, through the *60 whole transaction, the parties appear to have considered , . . it a partnership concern.
If, then, we look to the acts of Smithson on the one hand, and of Davidson on the other, the bill was a partners^P contract, perfectly fair and in the ordinary course of business. The imputations of fraud on either of them are gratuitous; particularly as to Smithson, who has evidently sold goods to Davidson, for the firm of which he was a member, and drew upon him accordingly in that character. And as the question here is not between an endorsee and the acceptor, but between the original parties to the contract, one of whom had a perfect right to bind his partners, we must hold them to be so bound, if such ivas the intention of the parties.
Such seems to be the conclusion to Avhich Ave must arrive, if Ave consider the case upon principles of reason and good sense, Avithout resorting to the adjudications upon bills of exchange. And as might be expected, these but confirm our deductions. The principles which govern the law of bills of exchange in relation to this subject, are indeed familiar. The poAver of one partner to bind the firm by his drawing or acceptance, and the necessity, in order to bind a party, that his name should appear upon the bill, are well understood. It seems at one time, too, to have been supposed, that Avhen a person endorses or accepts for himself and his partner, he should always express, that he does so for himself and partner, or subscribe both the names, or the names of the firm, and that otherwise it will not bind the firm. Chitty on Bills 51. citing Pinkney v. Hall, 1 Salk. 126. and other cases. But it has been determined in England, more than thirty years ago, that where a bill is drawn upon a firm, and accepted by one partner in his oavii name only, it will bind the firm. Mason v. Rumseys, 1 Camp. 384. And this seems but reasonable, since as he has the power, and is called upon to exercise it, the act of writing his acceptance on the bill, may fairly be regarded as done *61 in execution of that power. Nor can the payee or any future holder of the bill, be embarrassed by the form of the acceptance ; for the party being called upon to pay in his social character, must be understood to promise payment in the character in which it is demanded, and not in his individual character.
If this principle be correct, we have only to see whether the case before us falls within it. If, as I have supposed, Davidson carried on the business of the social house at London in his own name, then the case is clear; for the draft is upon him in that name, and he accepts in the same name; and the body of the bill distinctly shews, that the draft was “ on account of the firm of Dicks, Moore & co.” But if it be not sufficiently proved, that the firm in London was under Davidson’s name alone, still I think the same result would follow. For the bill calls on one of the partners of the firm, to pay the contents “ on account of the firm,” and he accepts ; that is, he agrees to do that which he is called upon to do, to pay the contents of the bill on account of the firm of which he was a partner. He is called upon to pay, not individually, but for account of the firm; and he accepts accordingly, not individually, but as a member of the firm. If he had said, “ accepted on account of the firm, W. Davidson,” there could have been no doubt And yet that is precisely the character and effect of the actual acceptance here.
The case of Thomas v. Bishop, 2 Stra. 955. is very different from this. 1. That was the case of an agent, the cashier of a company, and this the case of a partner: an agent must always contract in the name of his principal ; a partner can bind his copartners by any act which has reference to the partnership, though not done in the name of the firm. 2. In this case, the bill is drawn by Smithson, calling on Davidson to pay on account of Dicks, Moore & co. In the case of Thomas v. Bishop, the bill was directed to Bishop, cashier of *62 The York Buildings company, who was directed to place the same to account of the company; he was not called on to accept on their account. 3. Bishop accepted in his own name only, without assuming his official character, and therefore was personally hound: here Davidson accepts, generally, a hill drawn on him on account of the firm, and that acceptance required no express declaration that it was made for himself and partners. • And lastly, in that case, the action was by an endorsee ; and the court expressly said, “ It might have been otherwise, had the action been by J. S. (the payee) who was privy to the transaction, and it had appeared he tendered the bill as a bill on the company. Here, the action is by the drawer, the original party to the bill. In the case before us, it is very possible that an endorsee, not privy to the bill, might have had his action either against the firm of Dicks, Moore & co. or against Davidson, individually; against the firm, because it was a social transaction; or against him individually, because the acceptance was in his own name, and an endorsee might therefore fairly take it to bind him separately. The case of Hall v. Smith, 1 Barn. & Cress. 407. 8 Eng. C. L. R. 112. furnishes an instance of this. There TV. Smith gave a note thus: “ I promise to pay the bearer on demand £1. value received. For W. Smith, W. P. Smith and TV. R. Taylor; W. Smith.” An action against W. Smith, individually, was brought and sustained ; but the court clearly intimated, that a suit might also have been sustained against the partners for whom he signed; saying, “ there are many cases, where a party entering into a contract in his own name, may be sued, or those for whom he contracts maybe sued, &c.” Admitting, therefore, that an endorsee might have looked to Davidson individually, it will by no means follow, that the firm of Dicks, Moore & co. was not responsible upon his acceptance on their account.
*63 Upon the whole, therefore, I am of opinion, that the firm of Dicks, Moore & co. were hound by the acceptance of Davidson their partner; but my brethren are of a different opinion on that point; and it is unnecessary I should consider any other matter in the cause.
The decree of this court reversed that of the circuit superior court, with costs, and dismissed the bill as to Cunningham, the executor of Moore, and as to N. and J. Dick, leaving the plaintiff at liberty to proceed against Davidson alone; for which purpose, the case was remanded.
After the decree was pronounced, the appellee’s counsel, by way of motion for a rehearing, submitted, that the decree ought to be set aside, or at least ought to be modified, on the following grounds:
1. That, it appeared, from the answer of Cunningham, that Moore’s estate was indebted to W. Davidson, or to the firms of which he was a partner, in two sums of £ 213. 7. 0. and £ 520. 8. 5. sterling, with long arrears of interest; and it appeared by the commissioner’s report, that Robertson and wife had objected to the charge of those two sums to Moore’s estate, in Cunningham’s accounts of administration, on the ground that Davidson was largely a debtor, and Moore a creditor, of the house of Dicks, Moore & co. Therefore, the partnership accounts of Dicks, Moore & co. ought to be settled, in order to ascertain whether any and what balance was due from Dicks, Moore & co. or from the estate of Moore to Davidson ; and if any such balance should be found due to him, the same should be applied to the satisfaction of Smithson’s claim; since it was agreed on all hands, and admitted, both in the opinions of this court and in its decree, that Davidson was liable for the full amount of that claim. For the purpose of having these accounts settled, the executor of Moore, *64 and the surviving partners of Dicks, Moore & co. were necessary parties. But the decree of this court dis-missed those parties entirely from the cause, and so preeluded the settlement of any such accounts. The counse^ therefore submitted, that the decree ought to be so altered, as to retain those parties before the cotut.
2. That as the circuit superior court had held the proof adduced by Smithson of his claim against the house of Dicks, Moore & co. sufficient to establish the claim, and as the only ground on which this cotut reversed the decree, was that the proof was not sufficient for the purpose; this court, instead of proceeding to a final decree which would be a bar to the claim, ought to remand the cause, with directions that it should be opened, in order to receive such proofs as Simthson should be able to adduce to establish the liability of Dicks, Moore & co. If the proof now in the cause was insufficient to ascertain the liability of the partnership so as to warrant a decree against the partners, enough appeared to shew, that this was probably a partnership debt; and Smithson ought to have an opportunity of producing additional evidence, if he can. They cited Cropper v. Burtons, 5 Leigh 426. and Beverley v. Ellis & Allan, 1 Rand. 106.
3. The cause was not properly matured for hearing in the circuit superior court. For the absent defendants N. and J. Dick, for aught that appeared, were not regularly convented before the court. There was no proof of the publication of the order calling them before the court: there was only the printer’s certificate of the publication, not verified by his oath. The decree ought to be reversed for that cause, and the case sent back for regular proceedings. As no decree against those parties could have bound them, so no decree could properly be pronounced for them.
4. Supposing N. and J. Dick to have been duly con-vented before the court of chancery, they were both par- *65 tics in this court. But the counsel offered proof, that N. Dick was dead before the hearing of the cause here. The decree should, therefore, be set aside, in order that . . the appeal might be revived against the representatives of N. Dick, and the cause then heard, with all proper parties before the court.
Allen, J.
This case was very elaborately argued, and fully considered. Subsequent reflection has tended to confirm me in the correctness of the conclusion at which the majority of the court arrived. Since the decision was pronounced the appellee has asked for a rehearing, or if that could not be granted, for certain modifications of the decree.
The first ground assigned is that as the bill was dismissed as to Cunningham and N. and J. Dick and the cause remanded for further proceedings against Davidson, and as it appears that Davidson or the firm of which he is a member, is a creditor of Moore’s estate, an account cannot be settled with the firm of Dicks, Moore Sp co. if the bill is dismissed as to Moore’s representative and N. and J. Dick. The bill was filed to charge the firm in its social character alone. The plaintiff did not seek to charge Davidson individually, or Moore’s estate, or the firm, as a debtor or debtors of Davidson. This court has decided, that the firm was not responsible, but gave the plaintiff leave to proceed against Davidson. If he chooses to amend his bill, and pursue Davidson alone, and in the progress of the cause establishes his claim against him, and shews that others are his debtors, nothing in the decree rendered will prevent his making them defendants, and charging them on this ground. But the possibility of such a result cannot deprive the defendants of the benefit of the decree of the court upon the case as the parties have chosen to submit it.
*66 The second ground requires a reconsideration of the whole merits. They have already been discussed and decided. The whole issue was the liability of the firm. The plaintiff was, by the whole tenor of the answer, to ^ Pro°f every allegation tending to establish that liability. To remand the cause for further evidence, after a controversy so long protracted, upon the mere suggestion of counsel that such evidence may be in existence, and that too upon the sole point in controversy in the cause, would be to declare that chancery causes, already oppressive for delays, were henceforth to be interminable. The cases cited seem to me to have no application, and to have been decided upon the peculiar circumstances attending them. In Cropper v. Burton, the plaintiff had assigned a debt; his debtor proving insolvent; he satisfied his assignee, and filed a bill to set aside a fraudulent conveyance of the debtor. There Avas a general denial by infants, and strictly speaking the plaintiff Avas bound to prove his payment by him to his assignee. The debt, hoAvever, was not disputed; it had been secured by a mortgage, upon which a decree of foreclosure had been rendered, and the claim in part satisfied. The real subject in controversy was whether the conveyances were fraudulent ? The coimty court held they Avere; and upon an appeal, the chancellor reversed the decree and dismissed the bill because there was no proof of the payment by the assignor to the assignee. This court concurring Avith the chancellor, that the decree of the county court was erroneous in the absence of such proof, held it was too rigorous to dismiss the bill under such circumstances. The objection to the decree though fatal, was still one likely to have been overlooked. The money Avas due ; the plaintiff or his assignee Avas entitled to maintain the suit; and so far as the defendants were concerned it must have been immaterial Avhich recovered. Yet even in that case, judge Carr doubted the propriety of sending the cause back; *67 remarking that it would not seem to be the business of the courts to exercise this kind of guardianship over persons sui juris and able to take care of themselves. In Beverley y. Bilis Sf Allan, the appellees had tioned the court for another hearing, alleging they could produce evidence that the contract between Carter Beverley and the appellant had been rescinded, and offering an excuse for not adducing the evidence sooner. The court satisfied that the appellees were entitled to recover upon the case as then made, refused the rehearing. This court held, that as the question itself upon which the case turned, was res integra, it would be hard on the appellees, having a decree in their favour, to deprive them of their other defence; and therefore reversed the decree because the chancellor had refused to rehear the cause. This case is totally different from either of those. Here there was no petition for rehearing. The question was one depending on the proofs. The plaintiff alleged a partnership liability; it was denied ; and he was bound to sustain his allegations. He has chosen to rest his case upon the proofs in the record, and he must abide by them.
Another objection which the appellee now takes to his own decree, is that he obtained it improperly without due proof of publication against the absent defendants ; that the certificate of the printer was not under oath. There was no exception to the certificate in the court below; and the record sets out, that it appeared to the court the plaintiff had proceeded in the manner prescribed by law. It seems to me this would have been a sufficient answer to an objection to the decree on that ground, if made by the appellant; much more when the appellee alleges it as an error in his own proceedings.
The last objection is, that N. Dick is dead. His death has not been suggested; if it is, the suit can abate as to him. In a proceeding to estab it would seem to be doing a vain thing to set aside the decree, blish a claim *68 against a firm, the surviving partners are the proper part]'-es t0 contest the claim. To what purpose should the case he continued, to bring in the representatives of one of the partners, after it has been decided, that the firm *s not responsible, and so decided in a case where the surviving partner is a party. The plaintiff alleges in the bill, that Moore’s estate was alone solvent; he seeks for and takes a decree against his representative alone; and the court having held that he was not responsible, because there was no partnership liability,ecause it has since been ascertained that another partner was dead. If alive, the decree discharged him; and if his representatives do not claim to be made parties with a view to a proportion of the costs, the appellee cannot complain.
The motion is overruled.